# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Lori H-L.,[1]

        Plaintiff,

v.

Frank Bisignano, *Commissioner of*
*Social Security*

        Defendant.

Case No. 25-cv-1045-EMB

**ORDER**

Plaintiff Lori H-L. seeks judicial review of the final administrative decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). The matter is before me for disposition pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). I have reviewed the administrative record (Dkt. No. 4), Plaintiff's brief (Dkt. No. 6), the Commissioner's response (Dkt. No. 12), and Plaintiff's reply (Dkt. No. 13). *See* R. Supp. R. for Social Security Actions under 42 U.S.C. § 405(g), R. 5. Plaintiff's case is remanded.

## I.  Background

Plaintiff alleges disability involving a series of physical and mental impairments with a disability onset date of July 31, 2019. (Dkt. No. 6 ("Pl.'s

---

[1] This District has adopted a policy of using only the first name and last initial of any non-governmental parties on orders in Social Security matters.

Br.") at 3–4; Dkt. No. 4 ("Admin R.") at 86.).[2]  On September 24, 2021, Plaintiff applied for disability insurance benefits through the Social Security Administration ("SSA").  (Admin. R. at 211–12.)  The SSA denied Plaintiff's application on July 1, 2022, and again on reconsideration on March 1, 2023.  (Admin. R. 116–18, 125–27.)  Plaintiff requested a hearing, which was held remotely before an Administrative Law Judge ("ALJ") on October 25, 2023.  (*Id.* at 44–85.)  Plaintiff, who was 53 years old at the time, testified at that hearing. (*Id.* at 52.)

The ALJ issued his decision, unfavorable to Plaintiff, on December 15, 2023.  (Admin. R. at 17–37.)  He did so after conducting the familiar five-step evaluation set forth in 20 C.F.R. § 404.1520 to determine whether Plaintiff qualified as disabled under the Social Security Act   Under that analysis, the claimant carries the burden at the first four steps.

***At step one***, the claimant must establish that she is not engaged in any "substantial gainful activity."  *Id.* § 404.1520(a)(4)(i).  Here, the ALJ concluded Plaintiff had not engaged in substantial gainful employment since July 31, 2019, the date she was injured at work.  (Admin R. at 19, 26.)

---

[2] Citations to the administrative record reference the Bates numbers at the bottom of each page.

*At step two*, Plaintiff must show that she has a severe medically determinable impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii). The ALJ found Plaintiff had the following severe impairments:

- Right shoulder injury with rotator cuff tear;
- Complex regional pain syndrome of right upper extremity;
- Resting tremor;
- Lumbar degenerative disc disease;
- Post-concussive syndrome;
- Chronic migraines;
- Chronic pain syndrome;
- Fibromyalgia;
- Generalized anxiety disorder;
- Mood disorder;
- Adjustment disorder;
- Post-traumatic stress disorder; and
- Somatic symptom disorder.

(Admin. R. at 19–20.)

*At step three*, the Plaintiff must show that her impairment meets or equals one listed in the regulations.  20 C.F.R. § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1).)  Here, the ALJ concluded Plaintiff did "not have an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (Admin R. at 21.)  As is relevant

3

here, the ALJ "considered the severity of [Plaintiff]'s headaches under SSR 19-4p" but concluded "the severity of [Plaintiff]'s headaches d[id] not medically equal listing 11.02 of the Appendix 1 impairments." (*Id.* at 22–23.)

As a precursor to step four, the claimant must establish her residual functional capacity ("RFC"). *See* 20 C.F.R. § 404.1520(e). The ALJ articulated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally push and/or pull with the right upper extremity. The claimant can occasionally climb ramps and stairs. She can never climb ladders, ropes, and scaffolds. The claimant can frequently stoop, kneel, and crouch. She can never crawl. The claimant can occasionally reach overhead with the right upper extremity. She can frequently reach in all other directions with the right upper extremity. The claimant can frequently handle, finger, and feel bilaterally. She can never be exposed to unprotected heights, heavy moving machinery, or uneven terrain. . . .The mental residual functional capacity contains the following limitations to address the claimant's mental impairments and symptoms: she can understand and remember simple instructions; frequently interact with supervisors, coworkers, and the public; and deal with occasional changes in a routine work setting.

(Admin. R. at 25, 30.)

*At step four*, Plaintiff must show that she cannot perform any past relevant work given her residual functional capacity. 20 C.F.R. § 404.1520(a)(4)(iv); *see also Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). "Statements about [a claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled." 20 C.F.R. § 416.929(a). The

ALJ concluded Plaintiff was unable to perform any of her past relevant work. (Admin. R. at 35–36.)

*At step five*, the burden shifts to the Commissioner to establish that the claimant can perform other work existing in a significant number of jobs in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, the ALJ considered Plaintiff's RFC, age, education, and work history and determined that Plaintiff could perform other work, including as merchandise marker; inspector and hand packager; and production assembler. (Admin. R. at 36–37.) Based on those findings, the ALJ concluded Plaintiff was not disabled under the Social Security Act. (*Id.* at 37.) The Social Security Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1–6); 20 C.F.R. § 404.981. Plaintiff then filed this action seeking judicial review of the ALJ's decision, pursuant to 42 U.S.C. § 405(g).

## II.   Standard of Review

Judicial review of the ALJ's decision is limited to determining whether the ALJ legally erred, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018), or whether "substantial evidence on the record as a whole" supported the decision, *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000);

*see also* 42 U.S.C. § 405(g).  "Substantial evidence . . . is more than a mere scintilla."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

The Court must examine the entire administrative record, including both evidence that detracts from the ALJ's decision and evidence that supports it.  *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). Remand is required if the ALJ's opinion contains factual findings that, "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008).  But it is not the Court's task to reweigh the evidence.  *Follett v. Astrue*, CIV 09-3167 MJD/SRN, 2010 WL 4979011, at *7 (D. Minn. Nov. 16, 2010) (citing *Harwood v. Apfel,* 186 F.3d 1039, 1042 (8th Cir.1999)), *report and recommendation adopted,* 2010 WL 4974554 (D. Minn. Dec. 2, 2010). Instead, if the record would permit the Court to draw two different conclusions from the evidence, and one of those conclusions is the same as the ALJ's, the Court must affirm.  *See Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992); *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012).

### III.   Analysis

Plaintiff makes four arguments in favor of remand.  She raises two arguments related to the ALJ's determination of her RFC. In both of these arguments, Plaintiff argues the ALJ failed to properly account for her somatic symptom disorder.  I consider these arguments together first.  As explained below, I remand for further consideration on this basis.

 Next, she argues the ALJ erred by failing to properly consider whether her migraines and headaches equal listing § 11.02 at step three. Because the petition is remanded for further consideration of the RFC determination and findings made there related to Plaintiff's subjective reports of symptoms could impact the § 11.02 analysis, I also remand for reconsideration on this point.

Finally, Plaintiff claims the ALJ erred by failing to consider whether she was entitled to a closed period of disability.  Because I find that remand is warranted on other grounds, I decline to reach this argument.

#### a. *Plaintiff's RFC*

Plaintiff makes two challenges involving the RFC determination.  She argues the ALJ effectively ignored her somatic symptom disorder by failing to build a logical bridge between the evidence and the RFC, and that the ALJ failed to properly evaluate her somatic symptom disorder under Social Security Rule 16-3p.  A person suffering from somatic symptom disorder

"actually believes herself to be experiencing [physical] symptoms at a greater level of severity than clinical evidence can support." *Nowling v. Colvin*, 813 F.3d 1110, 1114 (8th Cir. 2016).

### 1.  Framework for Analysis

The RFC determination requires an ALJ to take a claimant's subjective statements into account.  When the ALJ finds that the claimant "has a medically determinable impairment(s) that could reasonably be expected to produce [the alleged] symptoms"—as the ALJ did here—he must then consider the extent to which those symptoms limit the claimant's ability to perform work-related activities.  SSR 16-3P, 2016 WL 1119029, at *2 (Mar. 16, 2016).  In determining the intensity, persistence, and limiting effects of the claimant's symptoms, the ALJ must:

> examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

*Id.* at *4.  The ALJ considers several factors in this analysis, including:

> 1. Daily activities;
>
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at * 7.  The ALJ need not conduct an exhaustive analysis of each factor. *See Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005).

Although a claimant's daily activities are relevant to her ability to work, she "need not prove she is bedridden or completely helpless to be found disabled." *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989).  Instead, she must "must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005) (quoting *Thomas*, 876 F.2d at 669).

And where, as here, a claimant suffers from a somatoform disorder, the ALJ may not reject her "subjective experiences without an express finding that [her] testimony is not credible." *Nowling*, 813 F.3d at 1114 (quoting *Metz v. Shalala*, 49 F.3d 374, 377 (8th Cir. 1995)).  In cases where the "ALJ expressly accepts that a claimant suffers from a somatoform disorder, but also finds the claimant at least partially non-credible, the ALJ ideally should set forth the credibility determination with sufficient detail to expressly

inform the reviewing court as to the factual details of the petitioner's limitations as accepted or believed by the ALJ."[3]  *Id.*

A reviewing court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain, even in cases involving somatoform disorder."  *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).  Credibility, in this context, "is an examination for the level of consistency between subjective assertions and the balance of the record as a whole," and "not an examination of a claimant's character."  *Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020).

### 2.    ALJ's Analysis

The ALJ considered the above factors by looking at the objective medical evidence, examining activities reported throughout the record, and considering the available medical opinions.   Throughout his analysis of this record evidence, the ALJ makes mere passing reference to Plaintiff's somatic

---

[3] In 2017, Social Security Ruling 16-3p eliminated the use of the term "credibility."  The ALJ is not to examine a claimant's character, but rather, to determine the level of consistency between subjective assertions by the claimant and the balance of the record as a whole.  As noted by the Eighth Circuit, "SSR 16-3p applies to [this] case, but it largely changes terminology rather than the substantive analysis to be applied."  *Lawrence v. Saul*, 970 F.3d 989, 995 (8th Cir. 2020).  Thus, the *Nowling* requirement of sufficient detail to expressly inform the court of believability in the case of somatoform disorder continues to apply.  *See Lisa H. v. Kijakazi*, 20-CV-2061 (HB), 2022 WL 959822, at *15 (D. Minn. Mar. 30, 2022).

symptom disorder, despite his finding that it is a severe impairment. And there is no discussion of how somatic symptom disorder is or could be impacting Plaintiff's perception of other symptoms.

The ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Admin. R. at 26.) This means that some of Plaintiff's statements are consistent with the record evidence. But the ALJ did not set forth enough detail in the remaining analysis for me to determine which of her statements he found inconsistent with which other record evidence. Nor is there any discussion of the impact of somatic symptom disorder related to perceived intensity of symptoms. Indeed, the ALJ acknowledges that "[t]he claimant consistently reported deficits/issues to her providers and consistently sought treatment throughout the period at issue." (*Id.* at 31.) But he then turns to the independent medical evaluations and concludes that "claimant's treatment and symptom reports are out of proportion to her subjective complaints." (*Id.*) This is exactly the problem with somatic symptom disorder, yet the ALJ does not explain that disorder's impact, if any, on this apparent mismatch.

To the extent that the ALJ makes specific findings of inconsistencies between the Plaintiff's subjective statements and the record, these

11

inconsistencies focus on her activities.  Plaintiff argues the ALJ's analysis is inconsistent with SSR 16-3p because he failed to recognize that "limited activities, often performed with significant assistance and accommodation, do not demonstrate the sustained functional capacity required for substantial gainful activity." (Pl. Br. at 45.)  She points to the ALJ's conclusion that Plaintiff "ha[d] been engaged in activities that are not consistent with her testimony that she experiences debilitating pain and is very limited in her functioning." (Admin. R. at 31.)  The ALJ acknowledged that "these statements about activities, by themselves, are not dispositive regarding the claimant's ability to perform work activity," but when they were "viewed together, along with objective evidence and subjective statements," they supported the conclusion that Plaintiff could perform a light range of work. (*Id.* at 32.)

The ALJ focused on the fact that Plaintiff "participated in gardening and other outdoor activities, which she found meaningful." (*Id.* at 31.)  But much of the evidence about Plaintiff's gardening involves future plans, not current activities.  (*See id.* at 2700 ("She finds gardening and other outdoor activities meaningful and so this felt like a possible set of activities that is low-to-no cost and can help her feel able to improve her own quality of life in the shorter term."); *see also id.* at 2687 (describing activities "related to home and garden" as one of several "desired projects/activities/goals").)  Similarly,

the ALJ referenced Plaintiff's future plan to "focus[] on making her farm the way [she] wanted it," and the fact that she was "looking into several avenues for side income." (*Id.* at 32 (citing *id.* at 694).) But there is no evidence Plaintiff in fact engaged in any type of farm work or did other work for side income.

And the record's references to concrete instances of gardening reflect modified or assisted activities. (*See id.* at 2115 (noting Plaintiff "ha[d] started to garden this summer [2022] though this is going slow and she needs help from neighbors or family members with lifting"; *id.* at 794 (mentioning "a new garden bed [Plaintiff]'s designed that makes gardening easier"); *see also id.* at 2189 (noting Plaintiff "[had] been doing raised bed gardening with help from neighbors").) Finally, Plaintiff points out that engaging in light gardening was part of her treatment plan, and she had experienced "improv[ed] function with light gardening." (*Id.* at 2166; *see also id.* at 2096 (noting Plaintiff was engaging in "functional strengthening at home with gardening" so she could improve right wrist and elbow motion in order to: brush her teeth with her right hand").)

The ALJ also pointed to several other activities as inconsistent with Plaintiff's claims of debilitating pain. He cited a November 2022 note indicating Plaintiff "ha[d] continued to engage in meaningful activities in a modified manner such as deer hunting trips, holding gathering [sic] with

13

friends, and dating." (Admin. R. at 31 (citing *id.* at 2134).)  An October 21, 2020 note indicated Plaintiff had "made efforts to engage in the valued hobby of hunting via a modified approach (vs sit[ting] it out altogether)." (*Id.* at 1155.)  The ALJ cited a December 2021 note that Plaintiff "continued to get out to have meals in restaurants and has game nights and good conversation" (*Id.* at 32 (citing *id.* at 730, 741 ("She is returning to some of her previous activities such as planning and managing her home and property, going on errands, eating meals out, and talking with neighbors.").)

The ALJ also relied on a January 6, 2023 note that Plaintiff "ha[d] been very busy over the holidays with a lot of activity." (Admin. R. at 31 (citing *id.* at 2752).)  However, there is no elaboration about what it meant for Plaintiff to be "very busy" in this context.  Conversely, Plaintiff testified that she had missed holidays, funerals, and weddings. (*Id.* at 63–64.)  Plaintiff also testified she only received guests about once a month, and she would go visit others once every two or three months. (*Id.*)

The ALJ noted Plaintiff was able to increase her driving restrictions to 40 miles as of March 2022—up from 15 miles in August 2021. (Admin. R. at 31–32 (*see also id.* at 559, 570).)  But, as the ALJ recognized, Plaintiff testified that she can't drive at all on certain days. (*Id.* at 26.)

Finally, the ALJ cited a March 2022 note stating Plaintiff "was independent with her home exercise program for her right shoulder." (*Id.* at

14

31–32 (citing *id.* at 1625).)  But that note indicates that although Plaintiff made improvements, her complex regional pain syndrome continued to affect her progress.  (*Id.* at 1625.)

I agree with Plaintiff that the ALJ "mischaracterized minimal, heavily accommodated activities as evidence of work capacity."  (Pl. Reply (Dkt. No. 13) at 10.)  To be sure, an ALJ can discount a claimant's subjective complaints if their daily activities are inconsistent with claims of debilitating pain.  *See, e.g.*, *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (discounting subjective complaints of debilitating pain where claimant's daily activities included "driving his children to work, driving his wife to school, shopping, visiting his mother, taking a break with his wife between her classes, watching television, and playing cards").  Here, "[i]t does not appear to the Court that the ALJ adequately took into account [Plaintiff's] testimony regarding the difficulty with which she conducts those activities."  *Gibson v. Barhart*, 02-cv-3802, 2004 WL 234409, at *4 (D. Minn. Feb. 4, 2004).

The ALJ did not address the routine limitations that Plaintiff testified about at the hearing.  For example, she stated she showers once every two weeks because the pain of water on her skin is unbearable.  (Admin. R. at 82 (describing pain from showering as "a million knives cut[ting] through [her] all at once").)  She testified that she weighed 120 pounds at the time of the October 25, 2023 hearing and had lost a significant amount of weight because

15

she was often unable to prepare food for herself.  (*Id.* at 55; *see also id.* at 399 (showing Plaintiff weighed 195 pounds on February 27, 2020).)   She testified that she would be unable to work a full 40-hour week because she spends several hours at a time lying in a dark room.  (*Id.* at 68–69.)  Though the ALJ is not obligated to accept these subjective statements as true, he appears to have discredited them by relying on infrequent, modified, and speculative activities.  *Cf. Meyer v. Astrue*, 09-cv-3205 MJD/LIB, 2011 WL 495637, at *12 (D. Minn. Jan. 18, 2011) ("In light of the ALJ's failure to address Plaintiff's asserted limitations in conducting his daily living activities, the ALJ's conclusion that Plaintiff's 'level of activity is inconsistent with his allegation of disability' cannot be credited by this Court."), *report and recommendation adopted*, 2011 WL 486261 (D. Minn. Feb. 3, 2011).  Accordingly, this action will be remanded for further consideration consistent with the factors set forth in SSR 16-3p.

Finally, although the ALJ articulated the inconsistencies above, he did not link them to Plaintiff's specific subjective statements.  On remand, the ALJ should reassess Plaintiff's subjective statements related to her symptoms and consider whether her somatic symptom disorder imposes additional limitations.  *See Nowling*, 813 F.3d at 1114 (recognizing ALJ "should set forth the credibility determination with sufficient detail to

16

expressly inform the reviewing court as to the factual details of the petitioner's limitations as accepted or believed by the ALJ").

### b. Listing § 11.02

Next, Plaintiff claims the ALJ erred at step three, where he concluded her migraines did "not reach listing level severity." (Admin. R. at 23.)  At the third step, the ALJ must "determine[] whether a claimant's impairment 'meets or equals' an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1." *David G. v. Berryhill*, 17-CV-3671 (HB), 2018 WL 4572981, at *5 (D. Minn. Sept. 24, 2018).  To demonstrate that her impairment or combination of impairments meets or equals a listing, Plaintiff "must establish all of the listing's specified criteria." *Melissa Kathleen B. v. Kijakazi*, 20-CV-2115 (ECT/HB), 2022 WL 447232, at *6 (D. Minn. Jan. 27, 2022) (citing *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)), *report and recommendation adopted*, 2022 WL 445822 (D. Minn. Feb. 14, 2022).

Her impairment must also "be at least equal in severity and duration to the criteria of any listed impairment." *Id.* (citing 20 C.F.R. § 404.1526(a)).  If the claimant can show that her impairment medically equals the severity of a listed impairment, she will be found disabled, and the analysis ends.  20 C.F.R. § 404.1520(4)(iii).  "While Plaintiff bears the burden of proof of establishing his disability, the ALJ has a duty to develop the record fully and

17

fairly." *Chase D. C v. Kijakazi*, 20-CV-1292 (ADM/TNL), 2022 WL 479357, at *7 (D. Minn. Jan. 31, 2022), *report and recommendation adopted*, 2022 WL 484986 (D. Minn. Feb. 16, 2022).

There is no specific listing for migraines or headaches, but Listing 11.02 "is the most closely analogous listed impairment for a[] [medically determinable impairment] of a primary headache disorder." SSR 19-4P, 2019 WL 4169635 (Aug. 26, 2019). Listing 11.02 is for epilepsy, so it addresses the frequency and severity of seizures. In this case, the ALJ must "consider whether Plaintiff's headaches are 'equal in severity and duration to the criteria in 11.02B,' not whether the claimant meets the criteria specified in those listings." *Heather C. v. Kijakazi*, 23-CV-484 (ECT/DJF), 2023 WL 8282059, at *2 (D. Minn. Nov. 30, 2023) (quoting SSR 19-4P, 2019 WL 4169635, at *7). The ruling instructs the ALJ to consider:

> [a] detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4P, 2019 WL 4169635, at *7.

Listing 11.02 has multiple subparts. Relevant here and related to frequency and analogized to headache events, Part B of the listing "requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment," while Part D "requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one [area of functioning]." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.02 subpt. D.   Under Part D, the ALJ must consider whether the primary headache disorder results in marked limitation in the following areas of functioning: "Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself."  SSR 19-4P, 2019 WL 4169635, at *7.

At step three, the ALJ recognized "that listing 11.02 is the most closely analogous listed impairment for a medically determinable primary headache disorder," but concluded "the severity of claimant's headaches does not medically equal listing 11.02." (Admin. R. at 23.)  He explained that although Plaintiff "has some headaches and takes medication for them, [] the record does not show interference with functioning or a listing level of frequency or duration included in this listing."  (*Id.*)

19

Citing this statement, Plaintiff argues the ALJ's "analysis is insufficient." (Pl. Br. at 39.) To be sure, "further articulation is not required if the ALJ's "articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process [] provide[s] rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.'" *Jane D. v. Kijakazi*, 20-CV-1278-MJD-KMM, 2021 WL 5360450, at *3 (D. Minn. Oct. 26, 2021) (quoting SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017)), *report and recommendation adopted,* 2021 WL 5358569 (D. Minn. Nov. 17, 2021).

But, as explained above, I am remanding this case for the ALJ to reconsider SSR 16-3p and Plaintiff's subjective reports of her symptoms. Because the remainder of the step-three analysis appears to rely on the RFC formulation, and I am remanding on that basis, the ALJ should also reconsider whether Plaintiff's headache disorder meets or equals 11.02.[4]

---

[4] At step three, the ALJ also noted that "[t]he record fails to demonstrate" evidence of tonic-clonic or dyscognitive seizures occurring with the requisite frequency. (Admin. R. at 23.) In relying on Plaintiff's lack of seizures, it appears the ALJ may have erred by considering whether Plaintiff's headaches satisfied Listing 11.02, not whether they met or equaled the relevant criteria. *Cf. Marshall v. Comm'r of Soc. Sec. Admin.*, 8:23-CV-129, 2023 WL 8601218, at *8 (D. Neb. Dec. 12, 2023) ("There is no requirement under 11.02 that the plaintiff meet the exact criteria for seizures, as stated by the ALJ, but that Plaintiff's symptoms equal the general requirements of that section.").

20

I leave this question open because Plaintiff's arguments about the frequency and severity of her headaches rely in part on her subjective statements and her reports to providers.  If the ALJ credits these statements upon reassessing SSR 16-3p, it appears possible Plaintiff's headaches could satisfy the medical equivalence standard.  For example, multiple providers documented that Plaintiff's headaches occurred with sufficient frequency to meet or equal Listing 11.02.  As Plaintiff points out, neurologist Dr. Ana Patricia Groeschel recorded Plaintiff suffering from "daily headaches with no improvement" that "spike in intensity more than 15 days of the [month] to become migraines," with some migraines "last[ing] several days."  (Admin. R. at 3267, 3269.)  Dr. Michael Jordan noted Plaintiff experienced "4–6 migraine headaches per week" with "constant headache[s]" since her injury.  (*Id.* at 542.)  It appears the ALJ discounted these provider notes on the basis that he found Plaintiff noncredible, which is the basis for remand, as explained above.

Similarly, the ALJ discussed a January 28, 2020 clinic note from Dr. Jane Bailey, M.D. in determining Plaintiff's RFC.  (*Id.* at 33.)  Dr. Bailey recorded that Plaintiff complained her vision looked "like 'Swiss cheese' with the holes being blurry, or sometimes the area surrounding the holes are blurry."  (*Id.* at 554, 558.)  Dr. Bailey also noted Plaintiff was "bothered by bright light," had "trouble with double vision" that varied from day-to-day,

21

and that "[v]ertical saccades make her nauseated." (*Id.* at 558.)  Finally, Dr.

Bailey noted Plaintiff's "[e]xam [wa]s significant for hyperopia." Dr. Bailey

recommended separate pairs of glasses for near and distance vision, blue

blocker lenses, tears for eye dryness, and "breaks with near work." (*Id.*)

The ALJ discredited Dr. Bailey's opinion because "there is limited

evidence [Plaintiff] received ongoing and consistent treatment for vision

issues." (Admin. R. at 33.)  The ALJ relied on Plaintiff's January 2023

statement to Dr. Renier that she wasn't following up with anyone for vision

therapy.  (*Id.* (citing *id.* at 2752).)  However, the same provider note indicated

Plaintiff reported "more frequent tunnel vision" and intended to schedule

more appointments with Kim Grabe, OT.  (*Id.* at 2752.)  Similarly, an April 6,

2023, telemedicine visit was cut short because of Plaintiff's light sensitivity.

(*Id.* at 3276.)   Because it's not clear whether the ALJ would draw the same

conclusion upon reassessment of the RFC formulation, I remand for

reconsideration at step three.

### c.  *Closed Period of Disability*

Finally, Plaintiff contends the ALJ erred by failing to consider whether

she was entitled to a closed period of disability.  Because I am remanding this

case for further consideration, I decline to consider Plaintiff's argument on

the existing record.  On reconsideration of the issues identified above, the

22

ALJ should also consider whether there was any 12-month period in which Plaintiff was entitled to benefits.

### IV.   Conclusion

Based on the above, and on the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that

1. Plaintiff's request for relief (Doc. No. 6) is GRANTED;

2. Defendant's opposition (Doc. No. 12) is DENIED; and

3. This case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: March 31, 2026

*s/ Elsa M. Bullard*

ELSA M. BULLARD
United States Magistrate Judge

23